## Theresa C. Stadler, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 15,246.

1. EVIDENCE—*as to what medical expert incompetent.* A medical expert who has examined the plaintiff solely for the purpose of enabling him to testify should not be permitted to recite to the jury acts of the plaintiff "which could have been purely voluntary and under the control of the injured party, and which may rest upon no other basis than the truthfulness of the injured party."

2. EVIDENCE—*when as to suffering improper.* The time in question being long after the accident, *held*, error to refuse to strike out the following answer to the following question:

"Q. How did she appear, whether sick or otherwise?

"A. She suffered, she suffered out through her back and shoulders."

3. EVIDENCE—*what declarations self-serving.* Cries and statements as to pain and sleeplessness made after the accident are self-serving and improper.

4. EVIDENCE—*what competent as to witness' condition.* It is error to refuse to permit a witness to answer a question which inquires as to how the plaintiff appeared as to being nervous or not nervous.

5. TRIAL—*duty of judge.* The trial judge should regulate and control the arguments of counsel within proper limits and should not permit indulgence in vulgarities, and if, on the whole, a trial marked by such incidents is unfair, a new trial will be granted.

Appeal from the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and remanded. Opinion filed February 14, 1911.

FRANKLIN B. HUSSEY and C. LEROY BROWN, for appellant.

EDWARD MAHER and H. E. WYNEKOOP, for appellee; MORSE IVES, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

This appeal from a judgment of the Municipal Court of Chicago in favor of appellee for $5,800 for breach of

a contract of carriage, presents a number of rulings on evidence and other questions for review. It is conceded by appellant that it committed a breach of the contract. The main controversy is over the amount of damages, and the main contention by the defendant, appellant on the trial, was that the neurasthenic condition or trouble with which the plaintiff below is afflicted, was not caused by the accident in question, but was produced by other causes for which appellant was in no way responsible. The contention of the plaintiff, on the other hand, was and is that it was caused by the injuries which she received in the accident of November 29, 1907, at Kedzie avenue and Sixty-third street, while plaintiff was a passenger on defendant's car.

Dr. N. H. Adams examined the plaintiff at the request of her attorney on three different occasions at his office. All of these examinations were made for the sole purpose of enabling the witness to testify as a medical expert in this case. The witness was asked to state what he found on his examinations. The witness answered: "I observed that when she entered my office that her walk was careful, that it was deliberate, that she carried the body bent forward slightly, that the neck was held rigid." The defendant moved to strike out the answer, on the ground that the matters testified to were subjective and incompetent. The motion was overruled. In our opinion the ruling was erroneous. The witness stated to the jury acts of the plaintiff, "which could have been purely voluntary and under the control of the injured party, and which may rest upon no other basis than the truthfulness of the injured party." Greinke v. Chicago City R. Co., 234 Ill. 564; Shaughnessy v. Holt, 236 id. 485.

The court permitted the testimony of Mrs. Brassel relating to a time long after the accident to stand, overruling a motion to strike out her answer to the following question:

"Q. How did she appear, whether sick or otherwise?

A. She suffered, she suffered out through her back and shoulders."

Mrs. Lathrop was permitted to state what occurred after the accident and while plaintiff was on the way to Dr. King's office, namely, that plaintiff would "cry that the pain was so great in her neck." This was a self-serving declaration, and as such it was incompetent. And so also is the testimony of Mrs. Storseth, who first met the plaintiff about two weeks after the accident, and who gave the plaintiff massage treatments. She testified that whenever she went to plaintiff's house the plaintiff complained of not having slept, and that it was several weeks before she could commence to bend her head back. Lake St. E. R. R. Co. v. Shaw, 203 Ill. 39.

On the other hand, when the defendant called Sadie Maze, who had observed the plaintiff while the witness was cleaning plaintiff's millinery store, and asked her how the plaintiff appeared to her about two years before the trial, as to being nervous or not nervous, the court sustained an objection to the question, because the terms of the question required an interpretation of the term nervous by the witness. We think this ruling was erroneous. Dimick v. Downs, 82 Ill. 570; C. & E. I. R. R. Co. v. Randolph, 199 id. 126; West Chicago St. R. Co. v. Fishman, 169 id. 196; Chicago C. R. Co. v. McCaughna, 216 id. 202.

Again, Dr. Banga, called by the defendant, testified that about ten years before the trial he had removed a tumor on plaintiff's womb, and with it the body of the womb, leaving only the neck of the womb of about an inch or an inch and a half of the neck of the womb, which projects into the vagina. Dr. Adams had testified at the instance of the plaintiff, that he had made a vaginal examination of her, and found the womb. In view of this testimony for the plaintiff, Dr. Small was called by the defendant and testified to the effect upon

the nervous system which would follow the removal of the womb, as testified to by Dr. Banga. He was then asked what would be the condition of the pelvic organs after such an operation on a digital examination. The court sustained an objection to the inquiry and ruled out the testimony. This was erroneous. In view of the testimony of Dr. Adams and Dr. Banga the testimony was important to the defendant. The question was purely one for an expert, and its purpose was to contradict the testimony of Dr. Adams and the testimony of the plaintiff herself. The court also erroneously sustained objections to similar lines of inquiry when other witnesses were on the witness stand.

From an examination of the record we are of the opinion that the trial of the cause was unfair in many particulars, which we do not stop to detail. The conduct and language used by counsel for the plaintiff were in the highest degree reprehensible. The trial at times more nearly represented a vulgar street brawl than a quiet, orderly proceeding in a court of justice. The court did not exercise its authority in controlling the arguments of counsel. The quality of justice is strangled and eliminated in such proceedings. The trial court, sitting as a court of justice, should not permit its proceedings to degenerate into an undignified and rude battle of vulgarities.

For errors committed on the trial, the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*